Michael F. Ram, Bar No. (104805)
MRam@RobinsKaplan.com
Robins Kaplan LLP
2440 W El Camino Real, Suite 100
Mountain View, CA 94040
Telephone:    650 784 4040
Facsimile:    650 784 4041

Michael J. Pacelli, *pro hac vice*
MPacelli@RobinsKaplan.com
Robins Kaplan LLP
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
Telephone:    612 349 8500
Facsimile:    612 349 4181

Samuel J. Strauss
sam@turkestrauss.com
Turk & Strauss LLP
613 Williamson Street #201
Madison, WI 53703
Telephone: 608-237-1775
Facsimile: 608-509-4423

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| Robin Moody, on behalf of herself and all others similarly situated,<br><br>           Plaintiff,<br><br>v.<br><br>Citibank, N.A,<br><br>           Defendant. | Case No. 3:18-cv-04496-JD<br><br>**PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT FOR**<br><br>**1. Violation of the California Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, et seq.)**<br><br>**2. Breach of Contract**<br><br>**DEMAND FOR JURY TRIAL**<br><br>Class Action Complaint Filed: July 25, 2018<br><br>Honorable Judge James Donato |

## INTRODUCTION AND STATEMENT OF FACTS

1.     This case concerns Citibank, N.A.'s ("Citi's") violation of California laws

requiring a mortgage lender to pay interest on funds held in escrow accounts for residential mortgages. Many mortgage lenders, including Defendant, require their customers to maintain an escrow account for the Property tax and insurance on the Property. These additional and significant deposits made by the mortgagor to maintain the escrow account are the mortgagor's funds. California law requires that lenders pay at least 2% on these accounts:

> ***Every financial institution that makes loans upon the security of real Property*** containing only a one- to four-family residence and located in this state or purchases obligations secured by such Property and that receives money in advance for payment of taxes and assessments on the Property, for insurance, or for other purposes relating to the Property, ***shall pay interest on the amount so held to the borrower. The interest on such amounts shall be at the rate of at least 2 percent simple interest per annum***. Such interest shall be credited to the borrower's account annually or upon termination of such account, whichever is earlier.
> ….
>
> ***No financial institution subject to the provisions of this section shall impose any fee or charge*** in connection with the maintenance or disbursement of money received in advance for the payment of taxes and assessments on real Property securing loans made by such financial institution, or for the payment of insurance, or for other purposes relating to such real Property, ***that will result in an interest rate of less than 2 percent per annum being paid on the moneys so received***.

California Civil Code §2954.8(a) (Emphasis added.)

2. Historically, certain mortgage lenders have erroneously claimed that the National Bank Act preempts Cal. Civ. Code §2954.8(a), reasoning that the state statute prevents or significantly interferes with the exercise of national bank powers in contravention of federal law. On March 2, 2018, the Ninth Circuit ruled that the National Bank Act does not preempt state mortgage escrow laws, including the requirement to pay interest on mortgage escrow accounts set forth in Cal. Civ. Code §2954.8(a), and found that banks are required to follow that law. *Lusnak v. Bank of Am., N.A.,* 883 F.3d 1185, 1197 (9th Cir. 2018). The Ninth Circuit further found that the CA statute was not preempted even before Dodd-Frank came into effect, thus it applies to mortgage loans initiated prior to Dodd-Frank. *Id.* at 1197.

3. More broadly, with the passage of the Dodd-Frank Wall Street Reform and

Consumer Protection Act and its new federal preemption provision, federal agencies and regulators are required to make "case-by-case" analyses of a state's laws on a particular banking practice and their "impact on any national bank that is subject to that law" before issuing regulations preempting the state law. See 12 U.S.C. § 25b(b). To the extent that federal regulators seek to preempt multiple states' laws, the regulator must also first consult with the Consumer Financial Protection Bureau ("CFPB"). *Id.* Congress has established this arduous path for the making of preemption determinations in an effort to discourage the OCC from making a large number of those determinations on an overbroad scale, to better protect the interests of states and consumers. Plaintiff is informed and believes that the federal regulatory agencies have not issued such case-by-case analyses with respect to California's mortgage escrow account interest law, nor have they consulted with the CFPB to issue regulations mandating a blanket preemption of multiple states' laws.

4.  Notably, the Dodd-Frank Act expresses an explicit policy that consumers should retain the interest gained on their escrow accounts. Congress has mandated that "[i]f prescribed by applicable State or Federal law, each creditor shall pay interest to the consumer on the amount held in any impound, trust, or escrow account that is subject to this section in the manner as prescribed by that applicable State or Federal law." 15 U.S.C. §1639d(g)(3). This requirement is in line with regulations of the United States Department of Housing and Urban Development ("HUD"), which state that: "[w]here escrow funds are invested, the net income derived from this investment must be passed on to the mortgagor in the form of interest…. **In compliance with any state and/or regulatory agency requirements governing the handling and/or payment of interest earned on a mortgagor's escrow account**." HUD Handbook 4330.1, Rev-5, §2-5. As the Act does not preempt state laws that afford "greater protection" than federal finance laws (12 U.S.C. § 5551(a)), Defendant is required to comply with California law.

5. In 2006, Plaintiff Robin Moody ("Moody") entered into a mortgage contract with Countrywide Home Loans, Inc. in respect of a single-family residential Property (the Moody Property) located in Alameda County, California. On or about February 9, 2016, the mortgage for the Moody Property was assigned to Citi.

6. The mortgage agreement for the Moody Property (the Moody Mortgage Agreement) contains boilerplate, adhesive and nonnegotiable terms that require Moody to make payments to an escrow account, held by Defendant:

> Funds for Escrow Items: Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items". At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees and Assessments, if any, be escrowed by the Borrower, and such dues, fees and assessments shall be an Escrow Item.

Notably, the Moody Mortgage Agreement acknowledges Defendant's obligation to pay interest where required by law. It states: "Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the funds."

7. As required by the Moody Mortgage Agreement, Plaintiff Moody has timely deposited funds into the escrow accounts, and Defendant has never claimed that she did not. Defendant received the funds from Moody either directly or indirectly through Defendant's agent or loan servicer whom Defendant authorized to receive the funds and whom Defendant controls. But Moody has never received back from Defendant or its agents or loan servicers the interest owing on her funds maintained in the escrow accounts.

8. On information and belief, Moody is informed and believes that Defendant

controlled and controls whether it, its agents, or its loan servicers authorized to receive the funds complied with and comply with applicable law, including the requirement to pay interest in accordance with California Civil Code §2954.8(a).

9. Moody therefore brings this action on her own behalf and on behalf of all others similarly situated for restitution and reimbursement, injunctive relief and declaratory relief, pursuant to the California Unfair Competition Law ("UCL"), California Business and Professional Code §17200, *et seq* and the common law of contract.

10. Plaintiff was not aware of Defendant's failure to make these payments as required by law, and an investigation by Plaintiff or by a reasonable consumer would not have uncovered Defendant's misconduct.

11. In 2017, Citigroup loaned $988 million for one- to four-family residential mortgages in the United States.[1]

| In millions of dollars | U.S. | Outside of U.S. | December 31, 2017 | December 31, 2016 |
|---|---|---|---|---|
| Commercial and similar letters of credit | $ 904 | $ 4,096 | $ 5,000 | $ 5,736 |
| One- to four-family residential mortgages | 988 | 1,686 | 2,674 | 2,838 |
| Revolving open-end loans secured by one- to four-family residential properties | 10,825 | 1,498 | 12,323 | 13,405 |
| Commercial real estate, construction and land development | 9,594 | 1,557 | 11,151 | 10,781 |
| Credit card lines | 578,634 | 99,666 | 678,300 | 664,335 |
| Commercial and other consumer loan commitments | 171,383 | 101,272 | 272,655 | 259,934 |
| Other commitments and contingencies | 2,182 | 889 | 3,071 | 3,202 |
| **Total** | $ 774,510 | $ 210,664 | $ 985,174 | $ 960,231 |

12. In 2016, Citibank, N.A. originated at least 17,000 first loan mortgages for one- to four-family, owner-occupied, site-built homes.[2]

---

[1] Citigroup, Inc., 2017 Annual Report, available at https://www.citigroup.com/citi/investor/quarterly/2018/ar17_en.pdf?ieNocache=816 (stating "[a] one- to four-family residential mortgage commitment is a written confirmation from Citigroup to a seller of a property that the bank will advance the specified sums enabling the buyer to complete the purchase.").

[2] Residential Mortgage Lending in 2016: Evidence from the Home Mortgage Disclosure Act Data - November 2017, https://www.federalreserve.gov/publications/2017-november-residential-mortgage-lending-in-2016.htm (last visited Jan. 25, 2019).

Table 11. Top 25 respondents in terms of total originations, 2016

| Respondent | Institution type[1] | Total originations (thousands) | Total purchases (thousands) | Home-purchase loans[2] | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Number (thousands) | Conventional | Higher priced[3] | LMI borrower[4] | LMI neighborhood[5] | Non-Hispanic white[6] | Minority borrower[6] | Sold[7] |
| Navy Federal Credit Union | Credit union | 64 | 0 | 29 | 42.3 | 26.5 | 19.8 | 12.6 | 55.8 | 23.2 | 56.4 |
| PNC Bank, NA | Large bank | 64 | 1 | 17 | 74.2 | .0 | 30.5 | 13.8 | 61.1 | 13.5 | 83.1 |
| Finance of America Mortgage | Ind. mort. co. | 62 | 0 | 30 | 48.9 | 1.4 | 24.7 | 18.6 | 61.6 | 24.7 | 99.9 |
| Citibank, NA | Large bank | 55 | 22 | 17 | 97.9 | .0 | 16.0 | 16.6 | 37.3 | 38.7 | 51.3 |
| Movement Mortgage, LLC | Ind. mort. co. | 54 | 0 | 43 | 46.0 | 3.8 | 30.8 | 16.7 | 68.7 | 24.7 | 87.8 |
| Stearns Lending, Inc. | Ind. mort. co. | 54 | 40 | 27 | 47.6 | 2.5 | 26.7 | 17.5 | 59.4 | 28.8 | 100.0 |
| SunTrust Mortgage, Inc. | Affiliated mort. co. | 51 | 59 | 16 | 87.1 | .2 | 16.5 | 10.8 | 62.4 | 17.8 | 98.9 |
| Ditech Financial, LLC | Ind. mort. co. | 47 | 58 | 3 | 78.4 | 1.2 | 23.9 | 13.3 | 75.0 | 16.2 | 98.0 |
| Mortgage Research Center, LLC | Ind. mort. co. | 46 | 0 | 36 | 1.6 | .0 | 28.2 | 14.0 | 61.7 | 21.9 | 100.0 |
| Top 25 institutions | ... | 2,828 | 1,203 | 1,004 | 62.6 | 2.8 | 23.2 | 13.7 | 62.0 | 22.0 | 86.3 |
| All institutions | ... | 8,378 | 2,232 | 3,463 | 61.3 | 3.7 | 26.2 | 14.1 | 66.4 | 21.1 | 85.5 |

1. See table 10, note 1. Return to table
2. First-lien mortgages for one- to four-family, owner-occupied, site-built homes. Return to table
3. Share of conventional loans that are higher priced. Return to table

## II
## JURISDICTION AND VENUE

13.     This Court has diversity jurisdiction pursuant to 28 USC § 1332(a)(1), because the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and Plaintiffs and members of the putative class are citizens of a State which is different from the State of citizenship of Defendant.

14.     This Court also has original jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2), because minimal diversity exists, there are more than 100 putative class members, and the aggregated claims of the individual class members exceeds the sum or value of $5,000,000 exclusive of interest and costs.

15.     This Court has personal jurisdiction over the Defendant because Defendant has conducted and continues to conduct business in the State of California, and because Defendant has committed the acts and omissions here complained in the State of California.

16.     Venue as to Defendant is proper in this judicial district. Citi is one of the largest mortgage lenders operating in this district; it has branches throughout this district; and many of Defendant's acts complained of occurred in this district.

# II
# THE PARTIES

17. Plaintiff Moody is a resident and citizen of the city of San Leandro, California and is the lawful owner of the Moody Property and is a party to the Moody Mortgage Agreement.

18. Defendant Citi is one of the largest national banks and one of the largest mortgage lenders in the country. Defendant is a wholly owned subsidiary of Citigroup, Inc. Defendant is a citizen of New York. Defendant enters into and/or maintains residential Property Mortgage Agreement with customers in California for Property located in California, and requires those borrowers to maintain escrow accounts, into which they are obligated to deposit significant funds for the payment of Property tax and insurance on their Property. Defendant has systematically and uniformly failed and continues to refuse to pay interest on those funds, in violation of state and federal laws.

# III
# CLASS ACTION ALLEGATIONS

19. Plaintiff Moody brings this litigation, on her own behalf and on behalf of the following Class, pursuant to Federal Rule of Civil Procedure 23:

> All mortgage loan customers of Citi (or its subsidiaries), whose mortgage loan is for a one-to-four family residence located in California, and who paid Citi or its agents or loan servicers money in advance for payment of taxes and assessments on the Property, for insurance, or for other purposes relating to the Property, and to whom Citi and its agents and loan servicers failed to pay interest as required by §2954.8(a). Excluded from the above Class is any entity in which Defendant has a controlling interest, and officers or directors of Defendant. The judge assigned to this case and the judge's staff members are also excluded from the Class.

20. Plaintiff reserves the right under Rule 23 to amend or modify the Class descriptions with greater specificity or further division into subclasses or limitation to particular issues, based on the results of discovery and further investigation.

21. The members of the Class are so numerous that their individual joinder is impracticable. Because the class members may be identified through business records regularly

maintained by Defendant and its employees and agents, and through the media, the number and identities of class members can be ascertained. Members of the Class can be notified of the pending action by e-mail, mail, and by published notice, if necessary.

22. There are questions of law and fact common to the Class. These questions predominate over any questions affecting only individual class members. These common legal and factual issues include, but are not limited to:

- Whether Defendant has systematically violated state and federal law with respect to the disbursement back to mortgage borrowers of the interest accrued on escrow accounts;
- Whether Defendant's conduct violates the unlawful prong of the UCL;
- Whether Defendant's conduct violates the unfairness prong of the UCL;
- Whether Defendant's conduct breached its mortgage agreements with customers;
- Whether Defendant must provide restitution and reimbursement in the amount of interest accrued on escrow accounts to its customers; and
- Whether declaratory and/or injunctive relief is appropriate to prohibit Defendant from engaging in this conduct in the future.

23. Plaintiff's claims are typical of the claims of each member of the Class. Plaintiff, like all other members of the Class, has sustained damages arising from Defendant's violations of the laws alleged here. Her damages are identical in nature to those of the Class.

24. The representative Plaintiff will fairly and adequately represent and protect the interests of the Class members. She has retained counsel who are experienced and competent trial lawyers in complex litigation and class action litigation. There are no material conflicts between Plaintiff and the members of the Class that would make class certification inappropriate. Counsel for the Class will vigorously assert the claims of all Class members.

25. This suit may be maintained as a class action under because questions of law and fact common to the Class predominate over the questions affecting only individual members of the Class and a class action is superior to other available means for the fair and efficient adjudication of this dispute. A class action is superior because the damages suffered by individual class members are small compared to the burden and expense of individual prosecution of the complex and extensive litigation needed to address Defendant's conduct. Further, it would be virtually impossible for the members of the Class to individually redress effectively the wrongs done to them. Even if Class members themselves could afford such individual litigation, the court system could not. In addition, individualized litigation increases the delay and expense to all parties and to the court system resulting from complex legal and factual issues of the case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. By contrast, the class action device presents far fewer management difficulties; allows the hearing of claims which might otherwise go unaddressed because of the relative expense of bringing individual lawsuits; and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

26. Plaintiff contemplates the eventual issuance of notice to the proposed Class members setting forth the subject and nature of the instant action. Defendant's own business records and electronic media can be utilized for the contemplated notices. To the extent that any further notices may be required, the Class Plaintiff would contemplate the use of additional media and/or mailings.

27. Absent class certification and determination of declaratory, injunctive, statutory and other legal questions on a classwide basis, prosecution of separate actions by individual members of the Class will create the risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the

parties opposing the Class or adjudication with respect to individual members of the Class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudication or substantially impair or impede their ability to protect their interests.

**FIRST CAUSE OF ACTION**
**(Violation of California Business & Professions Code Sections 17200, *et seq*. –**
**Unfair Competition Law – Unlawful Prong)**

28. Plaintiff incorporates by reference and re-alleges all paragraphs previously alleged.

24. Defendant, through its failure to pay interest as required on the Class members' residential mortgage escrow accounts, has violated California Civil Code §2954.8 and 15 U.S.C. §1639d(g), and contravened the declared legislative policy espoused in the HUD regulations as set forth in HUD Handbook 4330.1, Rev-5, §2-5. This constitutes unlawful conduct within the meaning of California Business & Professions Code Sections 17200, et seq.

29. Plaintiff and the Class members, and each of them, have been damaged by these unlawful practices. Pursuant to California Business and Professions Code § 17200 et seq. Plaintiff, on her own behalf and on behalf of all others similarly situated, seek relief as prayed for below.

**SECOND CAUSE OF ACTION**
**(Violation of California Business & Professions Code Sections 17200, et seq. –**
**Unfair Competition Law - Unfair Prong)**

30. Plaintiff incorporates by reference and re-allege all paragraphs previously alleged.

31. Defendant's conduct is unfair under the UCL because it has no utility and, even if it did, any utility is outweighed by the gravity of harm to Plaintiff and the Class members. Defendant's practice is also immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits.

32. Plaintiff and the Class members, and each of them, have been damaged by these practices. Pursuant to California Business and Professions Code § 17200 et seq. Plaintiff, on her

own behalf and on behalf of all others similarly situated, seek relief as prayed for below.

### THIRD CAUSE OF ACTION
### (Breach of Contract)

33. Plaintiff incorporates by reference and re-alleges all paragraphs previously alleged.

34. Defendant was and is bound by the standard form mortgage agreements it entered into with Plaintiff and the Class.

35. Plaintiff and the Class did all, or substantially all, of the significant things that the mortgage agreements required them to do.

36. By failing to pay to Plaintiff and the Class the statutory rate of interest owed on Plaintiff and the Class' escrow accounts, Defendant breached the terms of the agreements requiring it to comply with applicable state and federal law.

37. Plaintiff and the Class members have suffered damages as a result of Defendant's breach of contract.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and the members of the Class, demands judgment against and relief from Defendant as follows:

1. An order certifying that this action may be maintained as a class action and appointing Plaintiff and her counsel of record to represent the Class.

2. An order pursuant to California Business and Professions Code §§ 17203 requiring Defendant:

   a. to cease such acts and practices declared by this Court to be an unlawful, or an unfair business act or practice, a violation of laws, statutes, or regulations, or constituting unfair competition; and

   b. to disgorge all profits and compensation improperly obtained by Defendant as a result of such acts and practices declared by this Court to be an

       unlawful or unfair business act or practice, a violation of laws, statutes, or regulations, or constituting unfair competition and restore them to Plaintiff and the Class.

3. Declaratory relief determining the illegality of Defendant's acts and practices.

4. Damages under the cause of action for breach of contract.

5. Reasonable attorney's fees and costs, pursuant to California Code of Civil Procedure 1021.5, and other statutes as may be applicable, as well as provided by the contracts.

6. Prejudgment interest.

7. Costs of suit.

8. Such other and further relief as this Court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff requests a jury trial on all issues triable thereby.

| | |
|---|---|
| DATED: January 25, 2019 | **ROBINS KAPLAN LLP** |
| | By: */s/ Michael F. Ram*<br>Michael F. Ram, Bar No. (104805) |
| | Michael F. Ram, Bar No. (104805)<br>MRam@RobinsKaplan.com<br>Robins Kaplan LLP<br>2440 W El Camino Real<br>Suite 100<br>Mountain View, CA  94040<br>Telephone:   650 784 4040<br>Facsimile:    650 784 4041 |
| | Michael J. Pacelli, *pro hac vice*<br>MPacelli@RobinsKaplan.com<br>Robins Kaplan LLP<br>800 LaSalle Avenue, Suite 2800<br>Minneapolis, MN  55402<br>Telephone:   612 349 8500<br>Facsimile:    612 349 4181 |
| | Samuel J. Strauss<br>sam@turkestrauss.com<br>Turk & Strauss LLP<br>613 Williamson Street #201<br>Madison, WI 53703<br>Telephone: 608-237-1775<br>Facsimile: 608-509-4423 |
| | *Attorneys for Plaintiff* |