MAYER BROWN LLP
Evan M. Wooten (#247340)
ewooten@mayerbrown.com
350 South Grand Avenue, 25th Floor
Los Angeles, CA 90071-1503
Telephone: (213) 621-9450
Facsimile: (213) 625-0248

Lucia Nale (*admitted pro hac vice*)
lnale@mayerbrown.com
Debra Bogo-Ernst (*admitted pro hac vice*)
dernst@mayerbrown.com
71 South Wacker Drive
Chicago, IL 60606-4637
Telephone: (312) 782-0600
Facsimile:  (312) 701-7711

*Attorneys for Defendant Citibank, N.A.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| ROBIN MOODY, on behalf of herself and all others similarly situated,<br><br>    Plaintiff,<br><br>vs.<br><br>CITIBANK, N.A.,<br><br>    Defendant. | Case No. 3:18-cv-04496-JD<br><br>**DEFENDANT CITIBANK, N.A.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date: Thursday, March 21, 2019<br>Time: 10 a.m.<br>Location: Courtroom 11, 19th Floor<br><br>Judge: The Honorable James Donato |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION TO DISMISS ................................................................. 1

STATEMENT OF THE ISSUE TO BE DECIDED ..................................................................... 1

INTRODUCTION ......................................................................................................................... 1

BACKGROUND .......................................................................................................................... 2

LEGAL STANDARD ................................................................................................................... 5

ARGUMENT ................................................................................................................................ 5

    I.   This Action Should Be Dismissed Because Plaintiff Does Not And Cannot Allege That Citibank Breached Any Duty Owed Under California Civil Code § 2954.8(a) .... 6

    II.  Citibank Reserves Its Right To Argue Federal Preemption ......................................... 11

CONCLUSION ........................................................................................................................... 12

i

DEFENDANT CITIBANK, N.A.'S NOTICE OF MOTION AND MOTION TO DISMISS OR STAY, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT, CASE NO. 3:18-CV-04496-JD

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................................5

*Bass v. Cty. of Butte*,
  458 F.3d 978 (9th Cir. 2006) ...................................................................................................7

*Beck Park Apartments v. U.S. Dep't of Hous. & Urban Dev.*,
  695 F.2d 366 (9th Cir. 1982) ...................................................................................................5

*In re Capacitors Antitrust Litig.*,
  106 F. Supp. 3d 1051 (N.D. Cal. 2015) ...................................................................................5

*Christina Trust v. Riddle*,
  911 F.3d 799 (5th Cir. 2018) .................................................................................................10

*Dairy v. Bonham*,
  2013 WL 3829268 (N.D. Cal. 2013) .......................................................................................8

*Droeger v. Friedman, Sloan & Ross*,
  54 Cal.3d 26 (1991) .................................................................................................................7

*Enter. Leasing Corp. v. Shugart Corp.*,
  231 Cal. App. 3d 737 (1991) .................................................................................................10

*In re Gilead Scis. Sec. Litig.*,
  536 F.3d 1049 (9th Cir. 2008) .............................................................................................5, 9

*Green v. Cent. Mortg. Co.*,
  148 F. Supp. 3d 852 (N.D. Cal. 2015) ...................................................................................10

*Hawk v. Carrington Mortg. Servs., LLC*,
  2016 WL 4414844 (M.D. Pa. 2016) ......................................................................................10

*Johnson v. Federal Home Loan Mortgage Corp.*,
  793 F.3d 1005 (9th Cir. 2015) ............................................................................................9, 10

*Kievman v. Fed. Nat'l Mortg. Ass'n*,
  901 F. Supp. 2d 1348 (S.D. Fla. 2012) ..................................................................................10

*Lennard v. Yeung*,
  2012 WL 13006214 (C.D. Cal. 2012) .....................................................................................9

*Lewis v. Boehm*,
  947 F.2d 1265 (Wash. Ct. App. 1997) ..................................................................................10

*Lusnak v. Bank of America, N.A.*,
   883 F.3d 1185 (9th Cir. 2018) ..................................................................................... 2, 11

*Rosell v. Wells Fargo Bank, N.A.*,
   2014 WL 4063050 (N.D. Cal. 2014) ................................................................................. 3

*Wilcox v. Birtwhistle*,
   21 Cal. 4th 973 (1999) ...................................................................................................... 8

**Statutes, Regulations, and Rules**

15 U.S.C. § 1639d .................................................................................................................... 5

Cal. Fin. Code § 50003 ............................................................................................................ 7

Cal. Fin. Code § 50202 ............................................................................................................ 7

Cal. Civil Code § 2954.8 ................................................................................................ *passim*

Fed. R. Civ. P. 12(b)(6) ....................................................................................................... 1, 5

**Other Authorities**

*Core Legislative History of California Statutes of 1976, Chapter 25, Assembly Bill
   484—Pappan* .............................................................................................................. 7, 8

Consumer Financial Protection Bureau, *What's the difference between a mortgage
   lender and a servicer?* (Sept. 13, 2017), www.consumerfinance.gov/ask-
   cfpb/whats-the-difference-between-a-mortgage-lender-and-a-servicer-en-198/ ................ 7

HUD Handbook 4330.1, Rev-5, § 2-5(C),
   https://www.hud.gov/sites/documents/43301C2HSGH.PDF .......................................... 5

**NOTICE OF MOTION AND MOTION TO DISMISS**

PLEASE TAKE NOTICE that on Thursday, March 21, 2019, at 10 a.m., or as soon thereafter as the matter may be heard before the Honorable James Donato in the United States District Court for the Northern District of California, Courtroom 11, located on the 19th Floor of the United States Courthouse at 450 Golden Gate Avenue, San Francisco, California, Defendant Citibank, N.A. ("Citibank") will and hereby does move to dismiss this action with prejudice under Federal Rule of Civil Procedure 12(b)(6), on the ground that Plaintiff's First Amended Class Action Complaint fails to state a claim for which relief may be granted. This motion is based on this notice of motion and motion, the following memorandum of points and authorities, the pleadings, exhibits attached to Citibank's concurrently filed request for judicial notice and Citibank's previously filed request for judicial notice, and oral argument of counsel at the time of the hearing.

**STATEMENT OF THE ISSUE TO BE DECIDED**

Whether this action against Citibank should be dismissed for failure to state a claim under California Civil Code § 2954.8(a), where § 2954.8(a) requires certain financial institutions that receive advance escrow payments from mortgage borrowers to pay interest on them, but Citibank acquired Plaintiff's mortgage without taking over the mortgage servicing rights and thus neither receives Plaintiff's escrow payments nor controls the mortgage servicer that does receive them.

**INTRODUCTION**

In this putative class action, Plaintiff Robin Moody alleges that Citibank violated California Civil Code § 2954.8(a) because she has not received interest on the advance escrow payments that she is required to make to her mortgage servicer under the terms of her mortgage. She obtained that mortgage in 2006 from Countrywide Home Loans, Inc. ("Countrywide"), not Citibank. Although Citibank (in its capacity as an investor) acquired the mortgage in 2016, Citibank did not take over the mortgage servicing rights: indeed, Plaintiff does not and cannot allege that either Citibank or any Citibank affiliate has ever serviced Plaintiff's escrow account. Nonetheless, Plaintiff has sued Citibank—rather than the servicer of her mortgage—seeking disgorgement of profits that Citibank never received, as well as an order enjoining Citibank from supposedly unlawful servicing activities that Citibank was never responsible for. Moreover, Plaintiff would be a member of a putative class

action that is already proceeding in another California federal court against Plaintiff's mortgage servicer for failure to pay escrow interest (Lusnak v. Bank of Am., N.A., No. No. 2:14-cv-01855 (C.D. Cal.)): it makes little sense that Plaintiff should be allowed to seek wholly duplicative relief against Citibank in this case when it is the defendant in that action that would have both received the alleged profits she seeks to disgorge and been directly responsible for the purported conduct she seeks to enjoin.

Plaintiff's recent amendments to her complaint do not cure the fundamental deficiency Citibank identified in its previously filed motion to dismiss: because Citibank is simply the investor in Plaintiff's mortgage, it cannot be the entity required to pay escrow interest under § 2954.8(a). By its plain terms, § 2954.8(a) requires the financial institution that "receives" the borrower's escrow deposits to pay interest on them. That is not Citibank. Plaintiff's amended complaint provides no factual support for the conclusory allegation that Citibank receives Plaintiff's escrow deposits. Nor does it provide factual support for the allegation that Citibank controls the servicer that *does* receive those deposits. In fact, those allegations are contradicted by Plaintiff's mortgage, which provides that if the mortgage is sold, the purchaser does not assume the servicing rights. Plaintiff thus cannot state a claim for violation of § 2954.8(a) against Citibank, and therefore, this action should be dismissed with prejudice.

Citibank continues to maintain that § 2958(a)—as applied to a national bank such as Citibank—is preempted by federal law, as the Office of the Comptroller of the Currency ("OCC") determined through properly adopted regulations that have the force of law. *See* Dkt. 13; Dkt 24. The Ninth Circuit however has ruled that the National Bank Act does not preempt California Civil Code § 2958(a). *See Lusnak v. Bank of America, N.A.*, 883 F.3d 1185 (9th Cir. 2018). Citibank believes *Lusnak* was wrongly decided, but recognizes that this Court is bound by the Ninth Circuit's preemption determination unless and until the Ninth Circuit revisits it or the Supreme Court abrogates it. Plaintiff's claims still warrant dismissal because California law does not require Citibank to pay escrow interest in the circumstances here.

## BACKGROUND

Plaintiff filed this putative class action against Citibank on July 25, 2018, seeking

disgorgement and injunctive relief under California's Unfair Competition Law ("UCL") based on Citibank's alleged noncompliance with § 2954.8(a), and seeking damages for breach of contract under a provision of Plaintiff's mortgage that allegedly incorporates § 2954.8(a). Dkt. 1, ¶¶ 23–33 & p. 10. Citibank moved to dismiss for failure to state a claim on the ground that § 2954.8(a) is inapplicable to Citibank in the circumstances of this case. Dkt. 13. The Court had not yet ruled on the motion by the time of the January 24, 2019 case management conference, when the Court *sua sponte* dismissed Plaintiff's complaint without prejudice for failure to plead subject-matter jurisdiction. Dkt. 39. Plaintiff thereafter filed an "Amended Complaint" (Dkt. 40) which, in addition to making new jurisdictional allegations (*id.*, ¶¶ 13–14), also makes new allegations directed to the merits of Plaintiff's claims against Citibank. *E.g.*, *id.* ¶¶ 7–8. The new complaint, however, still offers few concrete details about Plaintiff's mortgage and escrow account.

Plaintiff alleges that she entered an agreement with Countrywide in 2006 for a mortgage on a residential property in Alameda County. Dkt. 40, ¶ 5. The Deed of Trust ("Ex. A") was attached as Exhibit A to Citibank's Oct. 9, 2018 request for judicial notice (Dkt. 14) which is still pending before the Court.[1] Along with principal and interest payments, the Deed of Trust requires that the "Borrower" periodically "shall pay" to the "Lender" "funds for Escrow Items," including "taxes and assessments" and "premiums for any and all insurance required by Lender." Ex. A at 4, 5. The Deed of Trust defines the "Lender" as Countrywide. *Id.* at 2. The Deed of Trust also provides that "Lender shall not be required to pay Borrower any interest or earnings on the [escrow] Funds," "[u]nless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds." *Id.* at 5. In 2016, Plaintiff alleges that the Deed of Trust was assigned to Citibank. Dkt. 40, ¶ 5. The Assignment of Deed of Trust ("Ex. B") was Exhibit B to Citibank's Oct. 9, 2018 request for judicial notice.[1]

Plaintiff alleges that she "has timely deposited funds into the escrow accounts" "[a]s

---

[1] Exhibits A and B to Citibank's prior request for judicial notice are Alameda County public records constituting "evidence which a court may properly consider on a motion to dismiss" because they are "evidence subject to judicial notice under Federal Rule of Evidence 201" as well as "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Rosell v. Wells Fargo Bank, N.A.*, 2014 WL 4063050, at *3 (N.D. Cal. 2014).

required by the … Mortgage Agreement," but "has never received back from *Defendant or its agents or loan servicers* the interest owing on her funds." Dkt. 40, ¶ 7 (emphasis added). The amended complaint fails, again, to identify the mortgage servicer that collects Plaintiff's escrow payments. Plaintiff does not—and cannot—allege that either Citibank or any corporate affiliate of Citibank ever serviced Plaintiff's mortgage or escrow account.[2] To the contrary, Section 20 of the Deed of Trust says that "[i]f the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer … and are not assumed by the Note purchaser." Ex. A at 12.

Nevertheless, Plaintiff's amended complaint now alleges that "Defendant received [escrow] funds from Moody either directly or indirectly through Defendant's agent or loan servicer whom Defendant authorized to receive the funds and whom Defendant controls." Dkt. 40, ¶ 7. The complaint also now alleges that "Defendant controlled and controls whether it, its agents, or its loan servicers authorized to receive the funds complied with and comply with applicable law, including the requirement to pay interest in accordance with California Civil Code § 2954.8(a)." *Id.* ¶ 8. The complaint pleads *no* concrete facts to support those new and wholly conclusory allegations. Accordingly, Plaintiff has pleaded no facts to show that Citibank is required to pay escrow interest under Civil Code § 2954.8(a), which applies only to the financial institution that "*receives* money in advance for … purposes relating to the property" (emphasis added). *See infra* at 5–11.

Yet Plaintiff seeks to represent a putative class of "mortgage loan customers of Citi (or its subsidiaries)" "to whom Citi and its agents and loan servicers failed to pay interest as required by § 2954.8(a)." Dkt. 40, ¶ 19. Given that Plaintiff's own complaint cites to and relies upon *Lusnak*, Plaintiff is obviously aware that her own mortgage servicer, Bank of America, has already been sued in another California federal court on behalf of a putative class of "[a]ll mortgage loan customers of Bank of America (or its subsidiaries)" who "did not receive interest on the amount held by Bank of America" in escrow. Lusnak v. Bank of Am., N.A., No. 2:14-cv-01855, Dkt. 1, ¶ 17 (C.D. Cal. Mar. 12, 2014). Even though Plaintiff's claims would be represented in that action

---

[2] Rather, and as plaintiff's counsel confirmed during the parties' Rule 26(f) conference, Citibank understands that Bank of America, N.A. ("Bank of America")—Countrywide's successor—has remained Plaintiff's mortgage servicer following the assignment to Citibank.

against her loan servicer (if it were certified as a class), Plaintiff apparently seeks to represent here a broad class of other Citibank customers that encompasses even those whose loans—*unlike* Plaintiff's loan—were "originated" by Citibank. *Id*. ¶ 12 ("In 2016, Citibank, N.A. originated at least 17,000 first loan mortgages.").

## LEGAL STANDARD

According to "[w]ell-established standards," "to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege 'enough facts to state a claim for relief that is plausible on its face.'" *In re Capacitors Antitrust Litig.*, 106 F. Supp. 3d 1051, 1060 (N.D. Cal. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). That requires "plead[ing] factual content [that] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft*, 556 U.S. at 678). "[T]he Court need not 'accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.'" *Id.* (quoting *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008)).

## ARGUMENT

All Plaintiff's claims are based on the allegation that Citibank's failure to pay Plaintiff escrow interest violated California Civil Code § 2954.8(a). Although the amended complaint also alleges that Citibank violated 15 U.S.C. § 1639d(g) and the terms of the Deed of Trust (Dkt. 40, ¶¶ 28-29, 36), neither creates any independent legal requirement to pay escrow interest; at most they require compliance with other applicable laws. *See* 15 U.S.C. § 1639d(g)(3) ("If prescribed by applicable State or Federal law, each creditor shall pay interest to the consumer on the amount held in any impound, trust, or escrow account . . . in the manner as prescribed by that applicable State or Federal law."); Ex. A at 5 ("Unless … Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds.").[3] Because

---

[3] The Complaint also alleges Citibank "contravened the declared legislative policy espoused in the HUD regulations as set forth in [the] HUD Handbook." Dkt. 40, ¶¶ 28-29. The HUD Handbook is "merely advisory" and does not support a cause of action. *Beck Park Apartments v. U.S. Dep't of Hous. & Urban Dev.*, 695 F.2d 366, 371 (9th Cir. 1982). Moreover, the Handbook says that "[w]here escrow funds *are invested*, the net income derived from this investment must be passed along to the mortgagor in the form of interest." HUD Handbook 4330.1, Rev-5, § 2-5(C) (emphasis added), https://www.hud.gov/sites/documents/43301C2HSGH.PDF. The amended complaint does not allege that Plaintiff's escrow funds were invested.

Plaintiff fails to plead factual content to show that Citibank plausibly may be liable to Plaintiff for violating § 2954.8(a), the Court should dismiss this action with prejudice.

**I.    This Action Should Be Dismissed Because Plaintiff Does Not And Cannot Allege That Citibank Breached Any Duty Owed Under California Civil Code § 2954.8(a)**

Plaintiff does not state a viable claim under § 2954.8(a). Section 2954.8(a) states: "Every financial institution that makes loans upon the security of real property containing only a one- to four-family residence and located in this state or purchases obligations secured by such property *and that receives* money in advance for payment of taxes and assessments on the property, for insurance or for other purposes relating to the property, shall pay interest on the amount so held to the borrower" (emphasis added). Because this statute only imposes a duty where a financial institution "receives" escrow payments—a function typically played by the loan servicer—Plaintiff fails to plausibly allege that Citibank violated it. While Plaintiff alleges that Citibank is the assignee of her mortgage, Plaintiff does not and cannot allege that Citibank ever took over the servicing of her mortgage and escrow account. Nor are any other concrete facts pleaded in the amended complaint to show that Citibank *received* Plaintiff's escrow payments.

The plain text of § 2954.8(a) imposes a duty to pay escrow interest to the borrower only on financial institutions that meet *two* separate criteria: (1) they must either "make[] loans upon the security of real property" or "purchase[] obligations secured by such property"; *and* (2) they must "receive[]" advance payments of escrow funds. Here, the amended complaint alleges that Plaintiff's Deed of Trust was assigned to Citibank in 2016, indicating that Citibank "purchase[d]" the interest in Plaintiff's Deed of Trust from Countrywide. *See* Compl. ¶ 5; Ex. B. The amended complaint also alleges that Plaintiff "deposited funds into the escrow accounts" required by the Deed of Trust. Compl. ¶ 7. There is not, however, any concrete factual allegation indicating that Citibank ever received those funds.

The use of the specific word "received" in § 2954.8(a) means that the second statutory criterion cannot be pleaded simply through the allegation that Plaintiff made escrow payments on a mortgage that is owned by Citibank. *Id*. Although no California court appears to have addressed this issue, it is clear that a borrower's escrow payments are typically collected or "received" by the

mortgage servicer—*i.e.*, the entity that handles the day-to-day management of the escrow account—which, as here, is often not the mortgage holder.[4] *See* Cal. Fin. Code § 50003(x) ("'*[s]ervice*' or '*servicing*' means **receiving** . . . payments of principal, interest, or other *amounts placed in escrow*, … and performing services . . . relating to that receipt") (emphases added).

This is confirmed when § 2954.8(a) is construed—as it must be—together with other California statutes on the subject of residential mortgage lending. *Compare Bass v. Cty. of Butte*, 458 F.3d 978, 981 (9th Cir. 2006) ("In interpreting a state statute, we must determine what meaning the state's highest court would give to the law."), *with Droeger v. Friedman, Sloan & Ross*, 54 Cal.3d 26, 50 (1991) ("statutes in pari materia—that is, statutes relating to the same subject matter—should be construed together"). Section 2954.8(a) is expressly incorporated in the California Residential Mortgage Lending Act, Cal. Fin. Code § 50000 *et seq*. Specifically, Financial Code § 50202(d) requires that "[a] borrower shall receive at least 2 percent simple interest per annum on impound account payments covered by Section 2954.8 of the Civil Code." But § 50202(d) addresses the privileges of servicers that "receive[]" escrow funds from borrowers. *Id*. ("benefits accruing from the placement in a non-interest-bearing account … of funds received by a licensee who *services* mortgage loans … shall inure to the licensee") (emphasis added). This shows that the state-law duty to pay escrow interest—and the identical word "receive[]" in § 2954.8— apply in the first instance to mortgage servicers.

The legislative history further confirms that it makes no sense to apply § 2954.8(a) to require payment of escrow interest by a financial institution that has simply invested in a mortgage loan without taking over the servicing rights. According to the Assembly policy committee analysis of the bill that was enacted as § 2954.8(a) in 1976, "THE PROBLEM" that the Legislature intended to address was a "question of equity": "[M]ost financial institutions [did] not pay the borrower any interest for the *use* of . . . impound funds," and "many borrowers argue[d] that the *proceeds* from the short-term loans [did] not rightfully belong to the lenders." *Core Legislative History of*

---

[4] *See* Consumer Financial Protection Bureau, *What's the difference between a mortgage lender and a servicer?* (Sept. 13, 2017), www.consumerfinance.gov/ask-cfpb/whats-the-difference-between-a-mortgage-lender-and-a-servicer-en-198/.

*California Statutes of 1976, Chapter 25, Assembly Bill 484—Pappan* (excerpts attached as exhibit to concurrently filed Request For Judicial Notice) at Assembly Policy Committee Materials 39 (emphases added); *see id.* at Senate Policy Committee Materials 204 (same).[5] The Legislature sought to redress this perceived lack of equity by requiring financial institutions that might benefit from the *use* of escrow funds to provide borrowers with a return on their money in the form of a fixed interest rate. As the Department of Savings and Loan stated in support of the bill, "as a matter of justice and equity, a lending institution which receives money in advance . . . and has the use of that money . . . should pay interest on these funds." *Id*. at Enrolled (Governor) Materials, Page 29; *see also id*. at Assembly Policy Committee Materials 36 ("[p]urpose" of A.B. 484 is "[r]eimbursement to borrowers for interest on impound account monies currently being used by financial institutions"); *id.* at 47 ("lenders bring to themselves the use of $350,000,000 a year – free"); *id*. at 96 ("Though these funds are held and used by the financial institution holding the mortgage . . . , the bank or savings and loan presently pay no interest whatsoever on these funds…. [C]onsumers are entitled to a minimum portion of the earnings income."); *id*. at 225 ("unacceptable to allow lenders the use of approximately $350,000,000 per year interest free"). The Legislature's purpose cannot be advanced by holding Citibank liable for unpaid escrow interest when Citibank never had the use of Plaintiff's escrow funds because it did not receive them. *See Wilcox v. Birtwhistle*, 21 Cal. 4th 973, 977 (1999) ("[w]hen construing a statute, [a court] must ascertain the intent of the Legislature so as to effectuate the purpose of the law," "look[ing] to . . . the ostensible objects to be achieved, the evils to be remedied, [and] legislative history") (internal quotation marks omitted). Thus, Plaintiff cannot plausibly claim that § 2954.8(a) requires Citibank to pay escrow interest absent any meaningful allegation that Citibank actually receives and uses the escrow funds.

To be sure, the amended complaint now does allege, in thoroughly conclusory fashion, that "Defendant received the [escrow] funds from Moody either directly or indirectly through Defendant's agent or loan servicer whom Defendant authorized to receive the funds and whom Defendant controls." Dkt. 40, ¶ 7. This unsupported allegation does not suffice to state a claim

---

[5] The court "may properly consider legislative history on a motion to dismiss." *Dairy v. Bonham*, 2013 WL 3829268, at *11 n.14 (N.D. Cal. 2013).

against Citibank and the Court need not accept it as true. *See In re Gilead Scis. Sec. Litig.*, 536 F.3d at 1055 (the Court need not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."). Certainly Plaintiff cannot plausibly allege that Citibank "directly" received Plaintiff's escrow payments where Plaintiff does not—because she cannot—allege that Citibank is the mortgage servicer, and does not allege any other facts to indicate that the payments were "directly" received by Citibank.

Rather, Plaintiff's theory is clearly that Citibank "indirectly" received Plaintiff's escrow payments because the servicer received them as Citibank's *agent*. However, "the existence of an agency relationship is a factual matter," and here too, Plaintiff "must plead facts indicating the existence of such a relationship to survive a motion to dismiss." *Lennard v. Yeung*, 2012 WL 13006214, at *15 (C.D. Cal. 2012). Plaintiff has not done so. The only allegation supporting an agency relationship is the conclusory statement that "Defendant controlled and controls whether it, its agents, or its loan servicers … complied with and comply with applicable law, including the requirement to pay interest." Dkt. 40, ¶ 8. This allegation is insufficient: Plaintiff does not even identify the servicer, let alone plead specific facts about its relationship to Citibank to suggest that Citibank controlled or authorized the servicer's decision not to pay escrow interest.

Plaintiff cannot show that Citibank is vicariously liable for the servicer's handling of her escrow account simply by relying on the fact that the servicer receives principal and interest payments on behalf of Citibank: In *Johnson v. Federal Home Loan Mortgage Corp.*, 793 F.3d 1005, 1006–07 (9th Cir. 2015), the Ninth Circuit addressed an analogous case where the plaintiff sued the entity that purchased his mortgage based on allegations that the servicer—who retained the servicing rights following the sale—had improperly administered the plaintiff's escrow account by failing to timely pay his insurance premium (thus triggering a series of events that led to the loss of his home). But the Ninth Circuit affirmed dismissal, concluding that the mortgage holder was not liable for the servicer's conduct—*even though* the holder possessed "the right to receive the payments on the note" and the servicer "service[d] mortgages for" the holder. *Id*. at 1008. Here, too, Plaintiff has not pleaded sufficient facts to show that Citibank is vicariously liable for the

servicer's purportedly improper handling of Plaintiff's escrow account.[6]

Moreover: as in *Johnson*, the circumstances of this case simply do not permit Plaintiff to rely on an agency theory to plead that Citibank "received" Plaintiff's escrow payments. Under the express terms of the Plaintiff's Deed of Trust, Citibank's purchase of the mortgage did not result in the assumption of any liability for the mortgage servicer. Section 20 of the Deed of Trust expressly provides that "[i]f the Note is sold …, the mortgage loan servicing obligations to Borrower … *are not assumed by the Note purchaser* unless otherwise provided by the Note purchaser." Ex. A at 12 (emphasis added). The Ninth Circuit addressed precisely these contractual terms in *Johnson*. *See* 793 F.3d at 1006 (quoting identical deed-of-trust provision). The Ninth Circuit enforced the deed-of-trust provisions to affirm dismissal of the plaintiff's claims against the mortgage holder. *Id*. at 1008–09. Rejecting the plaintiff's argument that the purchaser assumed the seller's obligations under the mortgage, the court relied on the deed of trust to hold that the "servicing obligations remained with [the seller]," and the purchaser "did not assume them." *Id*. at 1008.[7] Similarly, Citibank did not assume any liability for the servicing of Plaintiff's escrow account simply because it acquired an interest in Plaintiff's mortgage.

Because Plaintiff does not and cannot allege that Citibank assumed any mortgage servicing

---

[6] Similarly, the Fifth Circuit recently affirmed dismissal of an action against a mortgage holder based on the mortgage servicer's alleged violations of the Real Estate Settlement Procedures Act ("RESPA"), on the grounds that (1) the borrower had not pleaded sufficient facts to establish an agency relationship, and (2) the relevant provisions of RESPA did not make the mortgage holder vicariously liable for the servicer. *Christiana Trust v. Riddle*, 911 F.3d 799, 803-06 (5th Cir. 2018); *see also Hawk v. Carrington Mortg. Servs., LLC*, 2016 WL 4414844, at *4 (M.D. Pa. 2016) (citing, *inter alia*, *Green v. Cent. Mortg. Co.*, 148 F. Supp. 3d 852, 881 (N.D. Cal. 2015)) (under applicable RESPA provision which "only governs loan servicers," the "majority position" is that "mortgage holders . . . are not liable . . . for the alleged conduct of loan servicers"); *Kievman v. Fed. Nat'l Mortg. Ass'n*, 901 F. Supp. 2d 1348, 1352-53 (S.D. Fla. 2012) (lender was not liable for servicers' violations of Truth in Lending Act).

[7] Although *Johnson* was decided under Washington law, California law is no different in any relevant respect. *Compare Johnson*, 793 F.3d at 1008 (quoting *Lewis v. Boehm*, 947 F.2d 1265, 1270 (Wash. Ct. App. 1997)) ("under Washington law, 'an assignee in an executory contract is not liable on the underlying obligations absent an express assumption of those obligations'"), *with Enter. Leasing Corp. v. Shugart Corp.*, 231 Cal. App. 3d 737, 745 (1991) ("[T]he mere assignment of rights under an executory contract does not cast upon the assignee the obligations imposed by the contract upon the assignor.").

rights when it acquired her mortgage, this case starkly contrasts with *Lusnak*, where Bank of America both owned and serviced the plaintiff's mortgage. *See* Appellee's Response Brief 4, Lusnak v. Bank of Am., N.A., Dkt. 16, No. 14-56755 (9th Cir.). Likely for that reason, the parties in *Lusnak* "agree[d] that the terms of Lusnak's mortgage require *Bank of America* to pay interest on escrow funds if required by federal law or state law that is not preempted." *Lusnak*, 883 F.3d at 1190 (emphasis added). Thus, *Lusnak* is distinguishable from this case, and in no way requires this Court to hold that Plaintiff has stated a claim against Citibank for violation of § 2954.8(a). The *Lusnak* panel just did not consider the application of § 2954.8(a) to the circumstances here.

Finally, Plaintiff's complaint fails because Plaintiff cannot demonstrate—as a practical matter—that an adequate remedy could even be obtained from Citibank. Plaintiff fails to allege that Citibank has access to any escrow funds from which to pay interest, much less that Citibank obtained any profits from those funds. Thus, the relief requested by Plaintiff—disgorgement of profits and cessation of the unlawful conduct—would not be available from Citibank. *See* Dkt. 40 at page 10. Such relief, if available at all, likely would lie with the servicer of Plaintiff's loan. Any adjudication of Plaintiff's claims against Citibank would be duplicative of, or possibly even inconsistent with, parallel claims that potentially could be asserted against the servicer. While the identity of Plaintiff's servicer is obviously readily available to Plaintiff, she has conveniently failed to allege that critical fact, suggesting that this action may be intended as a means for a second bite at the *Lusnak* apple.

For these reasons, even if Plaintiff were entitled to relief, her claims are misdirected: Plaintiff does not and cannot plead that Citibank either directly received Plaintiff's escrow funds or is vicariously liable for their receipt. Plaintiff thus fails to state any claim against Citibank for purported violations of § 2954.8(a). The Complaint should be dismissed with prejudice.

**II.     Citibank Reserves Its Right To Argue Federal Preemption**

Solely for the purpose of preserving the argument that Plaintiff's claims are preempted by federal law, Citibank also asserts that *Lusnak* was wrongly decided for the reasons discussed in its prior briefing (*see* Dkt. 13, Dkt. 24), and that this action warrants dismissal for failure to state a claim because the National Bank Act and 12 C.F.R. § 34.4 preempt Plaintiff's claims. In the event

that the Court does not dismiss this action at this time, but subsequently the Ninth Circuit disapproves *Lusnak* or the Supreme Court abrogates it, Citibank reserves the right to ask the Court to reconsider whether this action should be dismissed on preemption grounds.

## CONCLUSION

For the foregoing reasons, this action should be dismissed with prejudice.

Dated: February 8, 2019

MAYER BROWN LLP

By: */s/ Debra Bogo-Ernst*
Evan M. Wooten (#247340)
ewooten@mayerbrown.com
350 South Grand Avenue, 25th Floor
Los Angeles, CA 90071-1503
Telephone: (213) 621-9450
Facsimile: (213) 625-0248

Lucia Nale (*admitted pro hac vice*)
lnale@mayerbrown.com
Debra Bogo-Ernst (*admitted pro hac vice*)
dernst@mayerbrown.com
71 South Wacker Drive
Chicago, IL 60606-4637
Telephone: (312) 782-0600
Facsimile: (312) 701-7711

*Attorneys for Defendant Citibank, N.A.*

**CERTIFICATE OF SERVICE**

I, Debra Bogo-Ernst, hereby certify that on February 8, 2019, I caused the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

By: */s/ Debra Bogo-Ernst*
Debra Bogo-Ernst